# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-2006
Filed February 11, 2026

———————————

**In the Interest of K.S., Minor Child,**

**J.H., Father,**
Appellant

**K.S.-M., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Johnson County,
The Honorable Joan M. Black, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

Sarah Hradek of the State Public Defender's Office, Iowa City, attorney for appellant father.

Joseph C. Pavelich of Fitzgerald, Klesner, & Pavelich, Iowa City, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Sara Linder of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Badding, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Parents separately appeal the termination of their parental rights to their son, born in 2024. The father claims the district court erred in concluding the child could not safely be returned to his custody, termination is not in the child's best interests, and the parent-child bond should preclude termination. The mother requests an extension of time to work toward reunification and contends the court erred in rejecting her request to reopen the record to accept evidence of her continued participation in reunification services after the termination hearing. We review appeals of termination-of-parental-rights proceedings under our familiar three-step analysis.[1] *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3) (2025).

## FATHER'S APPEAL

### I. Grounds for Termination

The court found grounds authorizing termination of the father's parental rights under Iowa Code section 232.116(1)(h). On appeal, the father claims the State "failed to prove by clear and convincing evidence that K.S. cannot be placed in [his] care." *See* Iowa Code § 232.116(1)(h)(4) (requiring the State to show by clear and convincing evidence that the child could not be returned safely to the custody of either parent at the time of the termination hearing).

---

[1] But if a parent does not challenge a step on appeal, then we do not address it. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). For example, the mother acknowledges the State proved the statutory grounds for termination under one section but claims the grounds were not shown under another. Accordingly, she has waived any claim of error on the unchallenged ground. We therefore affirm on the unchallenged ground. *See In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 (Iowa Ct. App. Dec. 6, 2023).

The Iowa Department of Health and Human Services became involved with this family most recently in December 2024,[2] just before the child's first birthday, due to concerns of methamphetamine use by the mother. The department also learned the mother threatened the father with a knife in the child's presence. Paternity testing identified the father as K.S.'s father. Although the father reported he was in a relationship with the mother, he had limited involvement with K.S. until after this case was initiated. The father stipulated to K.S.'s removal,[3] and the child was adjudicated in need of assistance (CINA).

The father began supervised visits with the child, completed a psychological evaluation, and agreed to start parenting services. But by March 2025, he had not completed any requested drug screens. In April, the father completed a substance-use evaluation that reported his urine-analysis screen was positive for an unspecified substance and recommended extended outpatient treatment. Around that same time, the father drove the mother to the child's foster home unannounced, where the mother was verbally aggressive toward the foster parents, prompting the court to enter a no-contact order against the parents. Concerns about domestic violence between the parents continued, and the parents acknowledged they used methamphetamine together. The court entered a CINA/dispositional order in May, which the mother appealed. This court affirmed the district court's

---

[2] The mother has a long history of methamphetamine use, and her parental rights to three of her four older children were previously terminated due to unresolved substance use.

[3] The mother evaded the department, and K.S. was removed from her custody at a court hearing during which her demeanor indicated that she was under the influence.

order in August. *In re K.S.*, No. 25-0839, 2025 WL 2238592, at *2–3 (Iowa Ct. App. Aug. 6, 2025).

Meanwhile, the State filed a petition to terminate parental rights. Shortly thereafter, the father picked the mother up from inpatient treatment. They stayed in a hotel and then went to the father's home where they used methamphetamine together. The father no-showed for the majority of drug tests requested by the department throughout this proceeding. Some of his completed sweat patches were reported as tampered with, and others were positive for methamphetamine.

The termination hearing took place in September. The father denied he had a substance-use problem, but then he equivocated, stating, "I wouldn't say I don't have any sort of problems with drugs because, obviously, I do but, yeah." He acknowledged he had "not been 100 percent honest" about his substance use. The father maintained that he had "tried [his] best to comply" with testing. He stated, "I've done not as well as I should have been doing. I could have done better." Nonetheless, the father believed K.S. could be placed in his custody "at this time." The father also requested an extension "to show that I can prove to you guys that I take this seriously." He assured the court that "I really want what is best for [K.S.]," and "I'm confident that I can do the right thing for my son."

The department and attorney/guardian ad litem recommended termination, and the court entered an order terminating both parents' rights. Following our review of the record, we concur with the court that K.S. could not be safely returned to the father's custody at the time of the termination hearing due to his unaddressed methamphetamine use and other facts replete in the record (including unaddressed domestic violence). Iowa Code section 232.116(1)(h) was satisfied.

5

## II.    Best Interests

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). The father states that he "began interacting somewhat regularly with K.S. in November or December 2024, when K.S. was less than one year old," but his interactions prior to that were limited by the mother. He maintains termination of his parental rights is not in the child's best interests because he has developed a relationship with the child.

The department caseworker acknowledged that the father had "engaged in a lot of good services" to "improve[] his parenting skills" and that he'd also "engaged in some mental health services that have helped him." But she did not believe substance-use treatment was effective for the father because he continued to deny that he was using. She opined termination was in the child's best interests, explaining, "It's . . . really a lack of accountability and, you know, willingness to take, you know, the testing seriously by [the father]." In her view, the father had "not participat[ed] wholeheartedly throughout the case." At the termination hearing, the father agreed he had never cared for the child beyond his two-hour fully supervised visits.

In assessing the best interests of this child, we must look at his long-range as well as immediate interests. *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). "This requires considering what the future holds for the child if returned to the parents." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). When making this decision, we look to the father's past performance because it may indicate the quality of care he's capable of providing in the future. *Id.* This child has been exposed to substance use and domestic violence, which creates a dangerous environment for him. *See In re J.B.-N.*, No. 25-1262, 2025 WL 3022957, at *2 (Iowa Ct. App. Oct. 29, 2025). The court agreed

with the guardian ad litem's assessment that "emotional harm" from ending the parent-child relationship "is outweighed by the consistency and physical safety [K.S.] will receive if the parents' rights are terminated." Upon our review, we agree termination is in K.S.'s best interests.

## III. Permissive Exception to Termination

The father also claims the closeness of the parent-child bond should prompt the court to apply an exception to termination. *See* Iowa Code § 232.116(3)(c). He points to the fact that he "was able to develop a relationship and bond with K.S. especially as the CINA case progressed and his visits were regularly offered." He asserts that "[a]s the case went on, and the relationship developed, K.S. has come to recognize [him] as 'dad' and now calls him such."

The court acknowledged K.S. "may have a bond" with the father but concluded his "need for ongoing nurturance, structure and permanency outweighs the loss of a bond that may exist." Application of the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). Under this record, the father has not established termination of his parental rights will be detrimental to the child.

## MOTHER'S APPEAL

### I. Additional Time to Work Toward Reunification

The mother maintains that if she is granted a six-month extension, the grounds for termination would no longer exist.[4] To support her claim, the mother points to the "long-term relationships" K.S. would have with her other children and her soon-to-be newborn[5] if her parental relationship remained intact. She further argues the court failed to consider the child's best interests in declining an extension, and if it had, it would have granted her more time to "demonstrate her ability to parent K.S."

The court entered a CINA/dispositional order in May. The mother appealed that order.[6] In July, while the appeal was pending, a permanency hearing took place, during which the State stated its intent to initiate termination proceedings. The court's order alerted the mother that if she "d[id] not meet conditions to have the child returned to the home within that amount of time, the State may request that the Court enter permanent orders for the child, which could include termination of parental rights and placement of the child for adoption."

In August, the mother left treatment and used methamphetamine with the father. The termination hearing took place the following month. The mother's decision to leave treatment and use methamphetamine shortly

---

[4] We question whether this issue was preserved for our review. We assume without deciding that this issue was preserved and elect to reach the merits of this challenge.

[5] The mother became pregnant during this proceeding.

[6] The mother appealed the adjudication and dispositional order, which was affirmed by our court on August 6, 2025. *K.S.*, 2025 WL 2238592, at *3.

before the termination hearing weighs against her request for additional time, especially after she failed to consistently participate in services throughout this case. As the guardian ad litem opined:

> At best, [the mother is] 37 days sober. [K.S.] needed that to happen probably four to five months ago, and if that had happened I don't think we would have had this hearing today. [K.S.] spends four hours of the 168 hours in a week with his parents. When funding was available, he was spending eight hours. So per parent, at best, he's spending two percent of his time with his parents. The problem is what was happening outside that two percent.

> . . . I think [the mother] was being honest today with us about a lot of things. She does appear differently. But we are asking [K.S.] to weigh the odds that it will remain this way, not just in the next months but ongoing, and the case law repeatedly states children are not equipped with pause buttons and the history is the best indicator of the future.

> . . . .

> It is not fair to ask [K.S.] to continue to wait for them. I appreciate that [K.S.] has relationships with other people in his life such as his half-sisters and a paternal aunt and uncle. I don't know how we can maintain those. I hope that we can in some way, but I don't believe those relationships—I don't mean to say they are not important, but in terms of [K.S.]'s need for permanency, not just now but forever, with what we have here, the downside to [K.S.], I don't believe it that way.

We concur that the mother failed to establish that additional time would have fixed the problems that prevented reunification with the child thus far. Under this record, we cannot find that additional time would result in a different outcome.

## II.     Motion to Reopen the Record

The termination hearing took place in September 2025. In October, the mother filed a motion to reopen the record "to require the submission of records of additional drug test results completed after [the termination

hearing].” The court issued its termination order in November, in which it summarily denied the mother’s motion.

The mother challenges the court’s ruling on appeal, claiming:

> Given the nature of the allegations made at the termination trial . . . and the evidence presented at the hearing, even the limited nature of [the mother]’s drug testing results would have been relevant to the court’s decision about whether to terminate [the mother]’s parental rights or extend her opportunity to work toward reunification.

“We review the court’s decision not to reopen the record for additional evidence for an abuse of discretion.” *In re S.W.*, No. 17-0297, 2017 WL 1735938, at *3 (Iowa Ct. App. May 3, 2017).

The mother acknowledges “[t]he court heard testimony throughout the trial of the mother’s drug use and treatment.” The court also considered the mother’s testimony that she last used methamphetamine in August. Indeed, the court found the mother “has begun to do better now that she is pregnant.” However, the court further noted that she “has a demonstrated history of getting sober during a pregnancy and then resume using illegal substances after the child is born.” The court concluded the mother’s “sobriety while she is pregnant does not convince the Court that the change is sustainable.” The mother had many months prior to the hearing to show a commitment to treatment and sobriety. We find no abuse of discretion in the court’s ruling.

## DISPOSITION

We affirm the termination of both parents’ parental rights.

**AFFIRMED ON BOTH APPEALS.**